

**IT IS SO ORDERED.**
**Signed February 7, 2014**

Arthur S. Weissbrodt

**Arthur S. Weissbrodt**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 09-58710-ASW |
| PHONG VAN TRAN, | Chapter 7 |
| Debtor. | |
| HOAN NGUYEN, | Adv. Proc. No. 11-5176 |
| Plaintiff, | |
| vs. | Date: February 11, 2014 |
| PHONG VAN TRAN, | Time: 3:15 p.m. |
| Defendant. | |

**TENTATIVE MEMORANDUM DECISION**
**GRANTING MOTION FOR SUMMARY JUDGMENT\***

This matter comes before the Court on a Motion for Summary Judgment filed by Defendant Phong Van Tran, who is represented by attorney Michael Chinh Vu. The Motion is opposed by Plaintiff Hoan Nguyen, who is represented by attorney Juliana Salfiti. Having considered the parties' respective positions, and the evidence presented by both sides, the Court grants the motion.

\* See Conclusion of this Tentative Decision on page 23, infra.

## I. Issue Presented

The Plaintiff's Complaint asserts two nondischargeability claims under 11 U.S.C. §§ 523(a)(4) (fraud while acting in a fiduciary capacity) and 523(a)(2)(A) (fraud). The Defendant has moved for summary judgment on both claims.

Summary judgment shall be rendered by the Court if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Bankr. P. 7056 (incorporating Fed. R. Civ. P. 56); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 584-85 (1986). All reasonable inferences must be drawn against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970); United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). The Court may not weigh the evidence or make credibility determinations. See Bravo v. City of Santa Maria, 665 F.3d 1076, 1083 (9th Cir. 2011).

Material facts are those that may affect the outcome of the case. A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986).

The movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This initial burden can be met by the movant's assertion that the non-moving party will be unable to produce evidence to support a particular fact. Fed. R.

Civ. P. 56(c)(1)(B). Because the Plaintiff bears the burden of proof at trial on both claims, the ultimate burden of production remains with the Plaintiff to produce sufficient competent evidence to establish that summary judgment should not enter. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).[1]

The parties have had an opportunity to conduct discovery. At a hearing held February 25, 2013, a cut-off of July 15, 2013, was set for general discovery, and a separate cut-off of August 20, 2013, was set for expert discovery. The instant motion was filed on October 4, 2013, after the close of discovery.

---

[1] The Plaintiff's response brief states that the Defendant has failed to meet the Defendant's burden of proof. The burden of proof, however, lies with the Plaintiff. See Ghomeshi v. Sabban (In re Sabban), 600 F.3d 1219, 1222 (9th Cir. 2010) (creditor bears the burden of proving the applicability of § 523(a)(2)(A) by a preponderance of the evidence); Otto v. Niles (In re Niles), 106 F.3d 1456, 1461 (9th Cir. 1997) (the burden of establishing the applicability of § 523(a)(4) starts with the plaintiff, who must first demonstrate a violation of a fiduciary duty). In the context of summary judgment, the burden of proof dictates which party bears the burden of production. See Celotex, 477 U.S. at 322-23. The Advisory Committee Notes to the 2010 Amendments to Rule 56 also explain that a moving party who lacks the burden of proof at trial does not need to produce evidence in support of a summary judgment motion:

> Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials. One party, without citing any other materials, may respond or reply that materials cited to dispute or support a fact do not establish the absence or presence of a genuine dispute. And a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact.

## II. Material Facts

The parties submitted evidence in support of, and in opposition to, the Motion for Summary Judgment. The Court has construed this evidence in a light most favorable to the Plaintiff.

### A. The Defendant's Declaration

The Defendant submitted a declaration in support of the Motion for Summary Judgment. The Plaintiff has objected to many of the Defendant's assertions contained in the declaration, on various admissibility grounds. For purposes of this decision, the Court will disregard the declaration to the extent the Plaintiff contests admissibility, because the Defendant was not required to produce any evidence in support of the motion, and because the portions of the declaration which the Court will not consider do not change the outcome of this decision. Fed. R. Civ. P. 56(c)(1)(B).

#### 1. The admissibility of the following statements in the declaration is not contested.

The Defendant is 73 years old. The Defendant is licensed by the California Department of Real Estate as a real estate agent and broker, but is now retired. The Defendant's only source of income is social security.

The Defendant was the broker of record for Lakami Professional Realty, Inc. ("Lakami"). The president of Lakami was Cindy Nguyen, who was also the Defendant's friend.

There are two pertinent properties: one located at 3205 Garden Avenue in San Jose, California ("the Garden Property"), and another located at 191 Mondigo Avenue in San Jose, California ("the Mondigo

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Property"). The Defendant did not know the Plaintiff and had nothing to do with the purchases of the Garden Property or the Mondigo Property. The Defendant did not know about any refinancing of either property, did not know about the sale of the Garden Property, and had nothing to do with the foreclosure of the Mondigo Property. The Defendant did not sign any documents related to the purchase, refinancing, or foreclosure of the Mondigo Property. The Defendant did not know that Cindy Nguyen promised the Plaintiff that Ms. Nguyen would remove the Plaintiff's name from the Mondigo Property, and Ms. Nguyen never discussed these issues with the Defendant.

The Plaintiff filed a civil action against Cindy Nguyen and several Doe defendants in the Santa Clara County Superior Court, Case Number 108-CV117943. In July 1999, the Plaintiff obtained a default against the Defendant, who was one of the Doe defendants. The Defendant moved in the state court to set aside the default, without success.

**2. The admissibility of the following statements in the declaration is contested, and thus not considered by the Court.**

The Plaintiff was in a relationship with Cindy Nguyen until 2006.[2] The Plaintiff and Cindy Nguyen lived together and presented

_____

[2] The Plaintiff has objected to the admissibility of this statement, but later admits that the Plaintiff and Ms. Nguyen were in a relationship during a different time period.

themselves as a couple to the public. Cindy Nguyen was murdered in 2011 during a carjacking incident in San Jose.[3]

The Defendant understood that the Plaintiff and Cindy Nguyen owned the Garden Property and the Mondigo Property together. The Defendant understood that the Garden Property was the Plaintiff's and Ms. Nguyen's residence, and that the Mondigo Property was a rental property. The Defendant understood that when the Garden Property was sold, the Plaintiff and Cindy Nguyen divided the proceeds.

**B. The Plaintiff's Declaration**

In opposition to the motion, the Plaintiff has submitted a declaration in which the Plaintiff attests to the following facts.

The Plaintiff is a long time resident of San Jose, California. At one time, the Plaintiff had a personal relationship with Cindy Nguyen, but the relationship ceased to exist before any of the relevant real estate transactions.[4] At the time of the transactions, the Plaintiff and Ms. Nguyen were no longer socializing.

In early 2005, the Plaintiff was surprised when Ms. Nguyen contacted the Plaintiff and offered the Plaintiff the opportunity to become the owner of two homes: the Garden Property and the

---

[3] The basis for the Plaintiff's objection to this statement is not evident. If Ms. Nguyen was murdered in a car-jacking incident, the Defendant could very well have knowledge of that fact, given their business relationship. Nevertheless, the fact is immaterial and disregarded for purposes of this ruling.

[4] The Plaintiff has provided no evidence as to the length of the relationship, whether the Plaintiff and Ms. Nguyen lived together, or whether they owned property together.

Mondigo Property.  The Plaintiff told Ms. Nguyen that the Plaintiff could not buy a house, but Ms. Nguyen told the Plaintiff that the Plaintiff would not have to bear the financial responsibility and that Ms. Nguyen's business could handle everything.[5]

The Plaintiff agreed to meet Ms. Nguyen and toured the two properties.  Ms. Nguyen told the Plaintiff that Ms. Nguyen's business would arrange for the purchase, that one house would be rented out, and that the Plaintiff could live in the other house.  The Plaintiff told Ms. Nguyen that the Plaintiff would be interested if Ms. Nguyen's office could make this occur without the Plaintiff having to put in any money.  The Plaintiff understood that the Plaintiff's name was place on title for the two houses.[6]  The Plaintiff resided in the Garden Property, but Ms. Nguyen did not reside with the Plaintiff at either location.

---

[5] There is practically no evidence as to how these transactions were handled.  For instance, there is no evidence as to whether the Plaintiff paid any consideration to be placed on the title to either property, or whether the Plaintiff obtained financing for either property at the time of purchase.  If the Plaintiff paid no consideration and did not obtain any financing, yet received the benefit of having the Plaintiff's name placed on the title, these facts would suggest that the Plaintiff was a willing participant in a set of illogical transactions that might not have been entirely above-board.  According to the Complaint, the properties were gifts of thanks from Ms. Nguyen to the Plaintiff, but there is no evidence of this.  Interestingly, in the Plaintiff's opposition brief, the Plaintiff states that Ms. Nguyen solicited the Plaintiff to enter into the transactions and to purchase the properties, which is something completely different.  However, that issue is not presently before the Court and does not factor into the instant decision.

[6] According to the Motion for Summary Judgment, both the Plaintiff and Ms. Nguyen were on the title for both properties.  However, neither party has offered any evidence to demonstrate how title was held on the two properties.  For purposes of this ruling, the Court assumes that only the Plaintiff's name appeared on the title.

The Plaintiff's dealings with Ms. Nguyen regarding the two properties were strictly business. The Plaintiff was aware that Ms. Nguyen had pled guilty to a felony theft, and the Plaintiff relied on Ms. Nguyen's assurance that Ms. Nguyen had a licensed real estate broker supervising the transactions and Ms. Nguyen's activities. The Plaintiff did not know that Ms. Nguyen's real estate license was restricted by the California Department of Real Estate for misconduct and dishonesty.

The Plaintiff had no written agreement with Ms. Nguyen or the real estate office for the management of the properties. Ms. Nguyen had indicated that Ms. Nguyen would "do it and maintain all necessary books and records." The Plaintiff trusted that since Ms. Nguyen "was under the supervision of a real estate broker that these functions and the money relating to [the Defendant's] properties were being managed lawfully and carefully."

Ms. Nguyen asked the Plaintiff if the Plaintiff could help Ms. Nguyen by refinancing the Mondigo Property, which was the rental property, so that Ms. Nguyen could invest more money in the Lakami offices. The Plaintiff agreed and signed a $500,000.00 loan agreement with Wells Fargo Bank. However, the Plaintiff did not want to continue with the business arrangement and told Ms. Nguyen to have the Plaintiff's name removed from the Mondigo Property.[7] Ms. Nguyen agreed to have the Wells Fargo loan paid off and to

---

[7] The Plaintiff has offered no explanation as to why the Plaintiff wanted the Plaintiff's name to be removed from the title. In a "strictly business" transaction, it makes no sense that the Plaintiff would agree to sign a $500,000.00 loan secured by the Mondigo Property and then expect to be removed from the title to the Mondigo Property while remaining personally liable on the loan. Nevertheless, the Court treats this fact as true for purposes of the instant motion.

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

remove the Plaintiff's name from the title. The Plaintiff thought that these tasks would be done, but never received any notice that payments were not made to Wells Fargo, that the Plaintiff's name remained on the title, or that there was a default.

In April 2007, the Plaintiff desired to sell the Garden Property. Ms. Nguyen arranged for Lakami to sell the Garden Property. It was not until the time of sale that Ms. Nguyen claimed a financial interest in the Garden Property and claimed that Ms. Nguyen and Lakami were owed money for managing the Garden Property. This was a surprise to the Plaintiff.

When the Garden Property was sold, an unnamed Lakami agent told the Plaintiff that the Plaintiff would receive more than $80,000.00 from the sale. After Lakami deducted property management and expense fees, there was only $58,000.00 remaining, and Ms. Nguyen claimed an entitlement to half this amount. The Plaintiff only received $29,000.00 from the sale proceeds.

It was the Plaintiff's understanding that the real estate broker -- meaning the Defendant -- received some of the money from the sale as well as some of the property management fees. The Plaintiff assumed that the broker also received money during the Wells Fargo refinance.[8]

Sometime prior to the sale of the Garden Property, the Plaintiff visited the Lakami office to sign blank documents for an unknown purpose. After the sale of the Garden Property, the Plaintiff's contact with Ms. Nguyen ceased.

---

[8] As discussed more fully _infra_, the Plaintiff offered no evidence of any payments to the Defendant.

Case: 11-05176   Doc# 42   Filed: 02/07/14   Entered: 02/07/14 13:24:12   Page 9 of 24

1  The Plaintiff later tried to buy a new vehicle.  The

2  dealership would not approve a loan because the Plaintiff's credit

3  was terrible.  The credit report showed that the Wells Fargo loan

4  had not been repaid, along with other bills and transactions of

5  which the Plaintiff knew nothing.[9]

6  Wells Fargo confirmed the default and the foreclosure on the

7  Mondigo Property.  Wells Fargo has pursued the Plaintiff for

8  repayment of the loan.

9  The Plaintiff's credit has been destroyed, the Plaintiff's

10  health has suffered, and the Plaintiff has lost a job because of

11  the stress of the transaction.

12  The Plaintiff filed a lawsuit against Ms. Nguyen.  During the

13  lawsuit, the Plaintiff learned that the Defendant allowed the

14  Defendant's broker's license to be used without performing any

15  supervision.  The Plaintiff does not believe the Defendant's

16  assertion that the Defendant received no money for the use of the

17  Defendant's license, and instead believes that the Defendant

18  received cash;[10] however, the Plaintiff has offered no evidence that

19  any money flowed from Ms. Nguyen to the Defendant.

20

21

22

23  [9] Although the Plaintiff states that there were unpaid bills and unauthorized transactions, the Plaintiff's declaration does not

24  identify any particular bills that were not paid or transactions that were not authorized.

25  [10] Immediately before asserting the Plaintiff's belief that the

26  Defendant received case, the Plaintiff's declaration states: "I understand how the Vietnamese community works."  However, there is

27  no elaboration as to what this means.

28

**C. The Defendant's Deposition Testimony**

The Plaintiff has offered excerpts from the Defendant's deposition testimony from the state court case. That tesitmony is as follows.

The Defendant was not acquainted with Ms. Nguyen before 2006.[11] Ms. Nguyen contacted the Defendant and asked to use the Defendant's broker's license, which was unsurprising to the Defendant because the Defendant's friends had made similar requests. The Defendant did not check with the California Department of Real Estate to see when Ms. Nguyen had obtained a real estate salesperson's license, but knew that Ms. Nguyen had worked for several years at a different company. The Defendant allowed Ms. Nguyen to use the Defendant's broker license, but the business was not profitable and Ms. Nguyen did not pay the Defendant "a penny."

The Defendant did not attend business meetings at Lakami and did not perform any actual duties or functions. From time to time, the Defendant stopped by the office to say hello, but that was all. The Defendant viewed Ms. Nguyen to be the owner of the company. The Defendant did not believe that the Defendant had a responsibility to supervise the acts of the Lakami office. The Defendant did not participate in any real estate transactions involving the Lakami office or the Plaintiff.

---

[11] As the Plaintiff points out, this testimony appears to be somewhat inconsistent with the Defendant's declaration, which states that the Defendant allowed Ms. Nguyen to use the Defendant's broker license because Ms. Nguyen was a friend. It could be that a friendship developed between the Defendant and Ms. Nguyen at the commencement of the business relationship, but for purposes of this decision, the Court will treat the statements as inconsistent.

**D. The Deposition Testimony of Cindy Nguyen**

According to Ms. Nguyen's deposition testimony, Ms. Nguyen opened the Lakami office in April 2005.[12]  However, Ms. Nguyen worked as a salesperson for Lakami since Ms. Nguyen received a license in 2006, until Lakami closed.

**E. The Department of Real Estate Proceedings**

On September 8, 2003, Commissioner Paula Reddish Zinnemann of the California Department of Real Estate issued a Decision denying Ms. Nguyen's application for a real estate salesperson license. The Decision adopted a proposed decision by Administrative Law Judge Michael Cohn, who recommended that the application be denied because of Ms. Nguyen's prior conviction for a crime involving moral turpitude, Ms. Nguyen's knowingly false statement of a material fact on the license application, and Ms. Nguyen's failure to pay attention to important details in the application.

On October 14, 2005, the Department of Real Estate and Ms. Nguyen entered into a stipulation to allow Ms. Nguyen to hold a restricted real estate salesperson license.

On December 29, 2008, Administrative Law Judge Melissa Crowell issued a Proposed Decision to revoke all licenses and licensing rights of Ms. Nguyen and Lakami.  The decision was based on findings that Ms. Nguyen had acted as a real estate salesperson in several transactions without first obtaining a real estate salesperson license, and that Ms. Nguyen had engaged in conduct which constituted fraud or dishonesty in a transaction involving

---

[12] The evidence on this point was not well-developed, but it appears that there may have been a different broker for the office up until the time of the Defendant's involvement.

buyer Paula Reza.  Judge Crowell determined that Lakami's real

estate broker license should be suspended under Cal. Bus. & Prof.

Code §§ 10130, 10137, and 10177(d), (g), and (h).[13]

**F. The Declaration of Guy Berry**

The Plaintiff has offered a declaration from Guy Berry, a

licensed real estate agent and broker, who is the Plaintiff's

expert witness.[14]  The following assertions are made in Mr. Berry's

declaration.

A designated broker is responsible for supervising and

controlling the activities conducted on the broker's behalf,

including the acts of persons selling real estate under the

broker's license.  This duty is a fiduciary duty.  The broker also

has duties to train agents, to be on site, to provide personal

supervision and monitoring, to review transaction paperwork, and to

be available to answer questions.

Mr. Berry opines that Ms. Nguyen's transactions with the

Plaintiff were without a license, were unlawful, and were

tantamount to a fraudulent misrepresentation.  Mr. Berry also

opines that based on the Defendant's deposition testimony, the

Defendant "apparently agreed to completely ignore all real estate

broker obligations to oversee and supervise the office's activity

which is a violation of the broker's standard of care in this

profession and a violation of [the Defendant's] fiduciary duties to

---

[13] It is not clear from the record whether the Proposed Decision of Judge Crowell became final.

[14] The Court assumes that Mr. Berry is qualified to serve as an expert and will not summarize Mr. Berry's qualifications or experience, which are not contested at this juncture.

the clients of Lakami including the Plaintiff[.]"  Mr. Berry also
states that the Defendant's "failure to comply with the proper
regulations permitted fraudulent activity to occur with the use of
[the Defendant's] brokerage license."  Mr. Berry denominated Mr.
Berry an "absentee broker," or -- as referred to in the industry --
a "rent-a-broker."

## III. Analysis

The Defendant argues that the Plaintiff cannot produce
evidence to support a claim under §§ 523(a)(2)(A) or (a)(4).[15]  The
Plaintiff has responded, incorrectly, that the Defendant holds the
burden of proof.  It is the Plaintiff who bears the burden of
proving both claims, and hence, the burden of production in the
context of summary judgment.  <u>See</u> Fed. R. Civ. P. 56(c)(1)(B);
<u>Celotex Corp.</u>, 477 U.S. at 322-23; <u>In re Sabban</u>, 600 F.3d at 1222;
<u>In re Niles</u>, 106 F.3d at 1461.  However, notwithstanding the
Plaintiff's erroneous assertion, the Plaintiff has also produced
evidence to support the Plaintiff's claims, which the Court now
considers.

The core issue before the Court is whether the Defendant can
be held liable under §§ 523(a)(2)(A) or (4) for the fraudulent
conduct of Cindy Nguyen.  All exceptions to discharge under
§ 523(a) are construed narrowly.  <u>See</u> <u>In re Tsurukawa</u>, 258 B.R.
192, 196 (B.A.P. 9th Cir. 2001) (<u>Tsurukawa I</u>).  There is no
evidence that the Defendant engaged in any affirmative conduct to
defraud the Plaintiff.  The parties are in complete agreement that

---

[15] Some of the Defendant's arguments pertain to § 523(a)(6).
However, as the Plaintiff correctly responds, there are no claims
under § 523(a)(6) asserted in this proceeding.

the Defendant was an absent broker who did not oversee or participate in any of the transactions involving the Plaintiff. The Plaintiff's theory of the case is that the Defendant should be held accountable for Ms. Nguyen's conduct solely because the Defendant allowed Ms. Nguyen to use the Defendant's broker license without providing any supervision.

**A. Claim Under § 523(a)(2)(A)**

Section 523(a)(2)(A) denies a debtor a discharge "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." A claim of fraud under this statute consists of the following: (1) a misrepresentation of fact by the debtor; (2) when the misrepresentation was made, the debtor knew the misrepresentation was false, (3) the debtor made the misrepresentation with the intention of deceiving the creditor, (4) the creditor justifiably relied upon the misrepresentation, and (5) the misrepresentation was the proximate cause of damage to the creditor. Cossu v. Jefferson Pilot Sec. Corp. (In Re Cossu), 410 F.3d 591, 596 (9th Cir. 2005); Zandt v. Mbunda (In re Mbunda), 484 B.R. 344, 350 (B.A.P. 9th Cir. 2012).

Here, the Defendant is not alleged to have made any misrepresentation. Instead, the Plaintiff seeks to hold the Defendant vicariously liable for Ms. Nguyen's false representation that Ms. Nguyen would remove the Plaintiff's name from the title to the Garden Property if the Plaintiff refinanced the loan on the

Garden Property, and possibly also for other false representations not specifically identified.

The Plaintiff argues that under § 523(a)(2), the Defendant's reckless indifference is sufficient to establish the Defendant's liability for the fraud. The Plaintiff contends that the Defendant is liable because the Defendant failed to supervise the Defendant's agents, and that the Defendant knew or should have known that the Defendant was obligated to review all of Cindy Nguyen's transactions carefully. The Plaintiff also argues that the Defendant's failure to supervise Cindy Nguyen properly equated to a ratification and approval of Cindy Nguyen's fraud, resulting in vicarious liability.

In Tsurukawa I, the Ninth Circuit Bankruptcy Appellate Panel ("the BAP") addressed whether there can be vicarious liability **between spouses** under § 523(a)(2)(A), stating:

> In the legislative discussion of § 523(a)(2)(A) in the Bankruptcy Reform Act of 1978, Congress addressed and cited with approval the holding in [Neal v. Clark, 95 U.S. 704 (1877)] that for purposes of nondischargeability, fraud had to be actual or positive and not implied in law. See 124 Cong.Rec. H11095-96 (daily ed. Sept. 28, 1978); S17412 (daily ed. Oct. 6, 1978) (statements of Rep. Edwards and Sen. DeConcini). Congress therefore implicitly rejected the attribution of one party's wrongful conduct to a debtor when determining dischargeability under § 523(a)(2)(A).

Tsurukawa I, 258 B.R. at 197. The BAP then distinguished several cases in which liability was imputed to an innocent partner/debtor under an agency theory, where the partner committed fraud while acting on behalf of the partnership in the ordinary course of business and the partner/debtor reaped monetary benefits from the fraud. Id. at 197-98. The BAP concluded that the debtor/spouse

could not be held liable for the spouse's fraud without a showing that the debtor knowingly participated in the wrongful conduct giving rise to the fraud. Id. at 196.

After remand, the BAP revisited the matter and affirmed the bankruptcy court's subsequent determination that the spouses were, in fact, business partners and that liability could be imputed between them. In re Tsurukawa, 287 B.R. 515, 525-27 (B.A.P. 9th Cir. 2002) (Tsurukawa II). The BAP explained that there was authority to support the proposition that the debtor/partner would not need to know about the fraud in order to be held liable. Id. at 525-56. The BAP did not elaborate on whether the fraud would need to be committed in the ordinary course of the partnership or whether debtor/partner would have had to reap a financial benefit, in order for liability to be imputed. However, in reaching its conclusion that liability could be imputed, the BAP relied on Strang v. Bradner, 114 U.S. 555 (1885), which stands for the general proposition that a partner cannot escape liability for the wrongful acts of a partner which are committed in the ordinary course of the partnership's business and "when the partners, who were not themselves guilty of wrong, received and appropriated the fruits of the fraudulent conduct of their associate in business." Strang, 114 U.S. at 561. Therefore, the Court reads these cases together to allow for the imputation of liability between partners when one partner commits fraud in the ordinary course of the partnership's business and when the fraudulent conduct confers a financial benefit on the partner who did not participate in the fraudulent conduct.

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

The Plaintiff has cited the case of <u>In re Bonnanzio</u>, 91 F.3d 296 (2d Cir. 1996), in support of imputing liability. In <u>Bonnanzio</u>, the appellate court considered in what circumstances the fraudulent conduct of an agent could be imputed to the principal, but not in a partnership context. The debtor in <u>Bonnanzio</u> participated as an investor in a tax shelter, but had defaulted on the debtor's obligation. The guarantor sought a determination that the debtor's debt was non-dischargeable under § 523(a)(2)(B), because even though the debtor lacked an intent to deceive, the debtor's accountant's intent to deceive should be imputed to the debtor. The appellate court did not resolve the legal issue of whether liability could be imputed; instead, the court remanded the case to the bankruptcy court to make that determination and to make additional factual findings as to whether the debtor knew or should have known of the fraud, and whether the accountant acted adverse to the debtor's interests. <u>See</u> <u>In re Bonnanzio</u>, 91 F.3d at 304. Therefore, while <u>Bonnanzio</u> describes the legal issue, it does not resolve it.

As <u>Tsurukawa I</u> and <u>Tsurukawa II</u> instruct, exceptions to discharge under § 523(a) are construed narrowly. Based upon the evidence presented to this Court, the Court rules that the fraudulent actions of Ms. Nguyen should not be imputed to the Defendant for purposes of a claim under § 523(a)(2)(A). The Defendant was completely uninvolved in the transactions between the Plaintiff and Ms. Nguyen, and did not know the Plaintiff. Significantly, there is no evidence that the Defendant financially benefited from the transactions. The deposition testimony of the Defendant -- offered by the Plaintiff into evidence -- states that

the Defendant did not receive a penny from Ms. Nguyen. Although the Plaintiff does not find this testimony to be credible, the Plaintiff has offered no evidence to rebut the Defendant's statement that Ms. Nguyen did not make any payments to the Defendant. Instead, the Plaintiff has only offered a statement of the Plaintiff's belief that the Defendant must have been paid something. This belief is not substantiated and is not enough.

Also, there is no evidence that the transactions were in the ordinary course of Lakami's business.[16] In fact, there is very little evidence of what the transactions were or how they came about. Although the Plaintiff had an opportunity to conduct discovery on this and all pertinent issues, the Plaintiff has offered no evidence of the sales of the Garden Property or the Mondigo Property, or of any refinance. For instance, the Plaintiff has offered no copies of any deeds of trust or promissory notes, which might show how title to the properties was held, or when the refinance occurred. There is also no evidence as to why Ms. Nguyen offered to convey the properties to the Plaintiff with no money due from the Plaintiff. Evidence is also lacking as to why the Defendant agreed to the Wells Fargo refinance, the purpose of which -- according to the Plaintiff -- was to help Ms. Nguyen invest more money in the Lakami office. Instead, there is evidence of a personal relationship between the Plaintiff and Ms. Nguyen which existed before the transactions occurred.

---

[16] If the transactions were gifts to the Plaintiff, as alleged in the Complaint, then this would indicate that the transactions were not in the ordinary course of Lakami's business. However, the Plaintiff has offered no evidence on this point.

The evidence, construed most favorably to the Plaintiff, shows that the Defendant was an absent broker who may have violated one or more state laws by failing to perform certain duties arising under state law.  This, however, does not necessarily require the imputation of a fraudulent intent for purposes of a claim under § 523(a)(2)(A).  Because the Plaintiff has not provided sufficient evidence which would show that the Defendant can be held vicariously liable for Ms. Nguyen's fraudulent conduct under an agency theory, the Defendant is entitled to summary judgment on the Plaintiff's claim under § 523(a)(2)(A).

**B. Claim Under § 523(a)(4)**

Section 523(a)(4) denies a debtor a discharge "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]"  Where a claim is asserted under § 523(a)(4), the broad definition of "fiduciary" under nonbankruptcy law -- which refers to a relationship involving trust, confidence, and good faith -- does not apply.  In re Honkanen, 446 B.R. 373, 378 (B.A.P. 9th Cir. 2011).  Instead, the definition of "fiduciary" is quite narrow in nondischargeability actions.  Id.

For instance, a fiduciary relationship can arise for purposes of § 523(a)(4) with only three types of trusts: express, technical, and statutory trusts.[17]  With express and technical trusts,  "the fiduciary relationship must be one arising from an express or

---

[17] The Ninth Circuit has identified one other circumstance in which a fiduciary relationship can arise: partnerships.  Partners in a California partnership are fiduciaries of each other for purposes of § 523(a)(4).  Ragsdale v. Haller, 780 F.2d 794, 796-97 (9th Cir. 1986).  Because the Plaintiff does not contend that the Plaintiff and the Defendant were partners, this circumstance does not apply.

technical trust that was imposed before, and without reference to, the wrongdoing that caused the debt as opposed to a trust _ex maleficio_, constructively imposed because of the act of wrongdoing from which the debt arose." _Id._ at 378-79.  In addition, "fiduciary relationships imposed by statute may cause the debtor to be considered a fiduciary under § 523(a)(4)."  _In re Hemmeter_, 242 F.3d 1186, 1190 (9th Cir. 2001).  However, fiduciary duties arising from constructive, resulting, or implied trusts do not fall within the purview of § 523(a)(4).  _Id._ at 1189-90.

In evaluating whether there are alleged facts to support an express, technical, or statutory trust, the court looks at state law.  The applicable state law -- which for purposes of this proceeding is California law -- "must clearly define fiduciary duties and identify trust property."  _In re Honkanen_, 446 B.R. at 379.  In California, an express trust exists when the following five criteria are met: "1) present intent to create a trust, 2) trustee, 3) trust property, 4) a proper legal purpose, and 5) a beneficiary."  _Id._ at 379 n. 6.  By comparison, a technical trust arises "from the relation of attorney, executor, or guardian, and not to debts due by a bankrupt in the character of an agent, factor, commission merchant, and the like."  _Id._ at 379 n.7.  Furthermore, a fiduciary relationship can exist when a statute "(1) defines the trust _res_; (2) identifies the fiduciary's fund management duties; and (3) imposes obligations on the fiduciary prior to the alleged wrongdoing."  _In re Hemmeter_, 242 F.3d at 1190.

This case involves the particular instance of an absent and wholly uninvolved real estate broker who turned a blind eye to how

the broker's license was being used.  The Ninth Circuit Bankruptcy Appellate Panel has stated quite plainly: "a California real estate licensee does not meet the fiduciary capacity requirement of § 523(a)(4) solely based on his or her status as a real estate licensee.  General fiduciary obligations are not sufficient to fulfill the fiduciary capacity requirement in the absence of a statutory, express, or technical trust."  In re Honkanen, 446 B.R. at 381.  District Judge Fern Smith reached a similar conclusion in In re Grabau, 151 B.R. 227, 232 (N.D. Cal. 1993), stating that "[t]he mere fact that an individual is a licensed real estate broker does not automatically create a fiduciary relationship with every client."  Judge Smith noted that "the existence of a fiduciary relationship for purposes of § 523(a)(4) requires that the debt arise from defendant's personal acts or omissions relating to his real estate license."  In re Grabau, 151 B.R. at 233.  In Grabau, the broker had not had any involvement with, and was absent during, the transactions, and thus was not a fiduciary for purposes of § 523(a)(4).  Id.  Judge Smith then found, as a matter of law, that "negligent supervision, without any active participation in the fraudulent transaction is not sufficient to create a fiduciary relationship for the purposes of non-dischargeability."  Id.

In the case at bar, the Plaintiff seeks to hold the Defendant liable because the Defendant was completely absent and had no involvement -- and thus did not prevent -- the fraud which Ms. Nguyen perpetrated upon the Plaintiff.  Under both Honkanen and Grabau, the Defendant's inaction -- even if a violation of the Defendant's legal obligations arising under the broker license, and even if a violation of fiduciary duties under California law --

could not give rise to a fiduciary duty for purposes of
§ 523(a)(4), which is far more limited in scope.  The Plaintiff has
not demonstrated any facts to support the existence of an express,
technical, or statutory trust.  The only possible trust <u>res</u>, here,
is the money from the Wells Fargo refinance, which came into being
as a result of the alleged malfeasance of Ms. Nguyen and cannot
satisfy the requirements of a statutory trust.  Thus, the Defendant
is entitled to judgment on the Plaintiff's claim under § 523(a)(4).

**IV. Conclusion**

The Plaintiff has not shown that either of the Plaintiff's
nondischargeability claims are supported as a matter of law.
Therefore, the Court grants the Defendant's Motion for Summary
Judgment.

**This is a Tentative Decision.  The parties may still present oral argument on Tuesday, February 11, 2014 at 3:15 p.m.  If either side plans to appear, and present argument, that party's counsel should inform opposing counsel and the Courtroom Deputy, Brook Esparza, at 408-278-7564, by close of business on Monday, February 10, 2014.**

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Court Service List

** Served on all parties by ECF